**Dale Wayne SIGLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71263.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 10, 1993.

Rehearing Denied Dec. 8, 1993.

Allan K. Butcher, David L. Richards, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Tanya S. Do-honey, Sylvia Mandel and Greg Miller, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

Appellant was indicted for the offense of capital murder under Texas Penal Code § 19.03(a)(2) for murder during the course of a robbery alleged to have been committed on April 7, 1990. Appellant was convicted of capital murder on February 26, 1991. The jury returned affirmative answers to the two special issues submitted pursuant to Art. 37.-071(b) of the Texas Code of Criminal Procedure [1], and appellant was sentenced to death

---

1. At the time of appellant's trial, Article 37.-071(b) provided in part:

(b) On conclusion of the presentation of evidence, the court shall submit the following three issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

under Art. 37.071(e).[2] Direct appeal to this Court is mandated by Art. 37.071(h).

Appellant raises twenty-five points of error. We will dispense with a recitation of any facts unnecessary to the resolution of three points: number two, challenging the sufficiency of evidence to establish appellant's future dangerousness; and numbers eleven and twelve, challenging the dismissal, on the State's motion for cause, of two veniremembers on the ground that the veniremembers could not answer affirmatively the second special issue based solely on the facts of the offense.

### I. Sufficiency of the Evidence

In his second point of error, appellant alleges that the evidence is insufficient to support an affirmative finding to special issue two of Art. 37.071(b)(2).[3] Appellant complains that mitigating evidence, i.e. his youth, his susceptibility to the influence of others and consumption of alcohol and illegal drugs on the night of the offense, negates a rational jury's affirmative answer of future dangerousness.

■ When answering the special issue of future dangerousness required by Art. 37.-071(b)(2), the jury may consider all of the evidence admitted at both the guilt-innocence and punishment stages of a trial; the facts of the offense itself may be sufficient to support a jury's affirmative answer to the punishment issue on future dangerousness. *See Black v. State*, 816 S.W.2d 350 (Tex.Cr.App. 1991); *Alexander v. State*, 740 S.W.2d 749 (Tex.Cr.App.1987). Special issue two requires a finding not only that the accused will likely commit violent crimes in the future but also that his violent conduct will pose a continuing threat to society. Art. 37.071(b)(2). Because appellant challenges the sufficiency of evidence to support the jury's answer to special issue two a summary of the facts is necessary.

■ Reviewing the record in the light most favorable to the verdict the following facts were established: Appellant was twenty-two years of age. On the afternoon of April 6, 1990 and into the early hours of April 7, 1990, appellant and some of his friends were "drinking beer, whiskey, smoking marijuana, smoking speed, and doing lines of speed." Appellant expressed a need for money and boasted that "he was drunk enough where he could rob some place." A friend suggested committing the offense of robbery at the friend's place of employment, a nearby sandwich shop. Appellant quizzed him for details of the shop's operations and layout. Appellant knew Mr. J. Z___, [hereafter the deceased], and that the deceased would be working at the sandwich shop that night. A second friend provided appellant with a .45 caliber handgun and informed him that the first cartridge was a specially adapted exploding bullet. Appellant departed to commit the offense, boasting that he would kill the deceased if necessary.

According to appellant's confession he entered the shop, visited with the deceased and pulled out the gun while making small talk. He then committed the robbery and followed the deceased to a back-room. Appellant shot the deceased twice to the back of the head while the deceased lay wounded on the floor. Appellant emptied the gun, shooting the deceased six times and then exited the shop careful to use his jacket to open the door so as not to leave fingerprints. Within fifteen minutes of the robbery, two unsuspecting customers discovered the body of the deceased in the back-room. The cash register indicated that the robbery occurred at 1:14 a.m. and that approximately $450 were missing.

Appellant returned to his friends, boasting that the deceased would appear in the next day's obituaries. In the days following, appellant boasted and bragged about the murder in great detail, without remorse, to sev-

---

2. Hereinafter all article references are to the Texas Code of Criminal Procedure unless otherwise cited.

3. Former Article 37.071(b)(2) V.A.C.C.P., has been recodified since appellant's trial, see Acts 1991, 72nd Leg., ch. 838, p. 2988, § 1, eff. Sept. 1, 1991, now Article 37.071 § 2(b)(1).

eral friends. He told one friend that before killing the deceased, he apologized to him about having to kill him.

The punishment evidence established a record of escalating violence and crime. Appellant's California juvenile record established that he was placed on probation for two burglary (felony) arrests. His probation officer testified that while on probation, appellant committed three more burglaries, and was ultimately given additional incarceration in juvenile hall.

In Texas, appellant's only prior criminal incident on record was a shop-lifting charge at an Arlington K–mart. Appellant was tackled, and was kicking and hitting, and had to be subdued by several store employees. Evidence was also introduced that appellant participated and bragged about several other crimes. Appellant participated in a couple of violent shooting sprees inside an abandoned home in Arlington, breaking in and shooting up the walls of the house. On several occasions he bragged of having killed someone in California. Several friends testified that appellant liked for people to fear him and that he often threatened people with violence, and would carry out his threat when he thought it necessary.

Evidence was introduced that while incarcerated for the present offense, appellant bullied his cellmate, threatening him with violence, and acted like a "hot shot" who wanted to run the place. In a written request for a cell change, appellant wrote "Move me before I have to seriously hurt someone."

Dr. Coons, a psychiatrist, testified and opined, based on several factors, that appellant constituted a continuing threat to society. Appellant's lack of a conscience was, for Dr. Coons, a strong indicator of future dangerousness, since it is unlikely that one without a conscience at appellant's age would ever develop one. Appellant's bragging about the present murder and the California murder, even if fictitious, suggested an attempt by appellant to portray himself as a violent person. Dr. Coons stated that such a

self-image in one so young and with a history of sociopathic behavior indicated a serious threat to society. Dr. Coons also testified that appellant did not act while under the domination of another or because of drug dependency.

Dr. James Grigson, a psychiatrist, after reviewing information relating to and background of appellant, testified that appellant posed a future danger to society. Dr. Grigson opined that the crime was not a result of drug addiction, but just another step-up in appellant's escalating tendency toward increasingly violent crimes.

We review the record in the light most favorable to the jury's finding and will not disturb its finding if any rational trier of fact could have found sufficient evidence upon which to affirmatively answer that appellant is a continuing threat to society. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Cantu v. State*, 842 S.W.2d 667, 674 (Tex.Cr.App.1992). The jurors determined, under the circumstances of this case, that Appellant would likely commit violent crimes in the future and that his violent conduct will pose a continuing threat to society. Considering the record as a whole, we cannot say that their conclusion was without sufficient evidentiary support.

Appellant's second point of error is overruled.

## II. Voir Dire

■ Appellant contends in his eleventh and twelfth points of error that veniremembers Johnston and Smart were improperly dismissed for cause upon the State's motion. Appellant argues that the trial court erroneously applied an appellate standard for judging the sufficiency to sustain a jury verdict to whether a juror is qualified for capital jury service. The State may challenge a veniremember for cause if "he has a bias or prejudice against any phase of law upon which the state is entitled to rely for conviction or punishment." Article 35.16(b)(3).

During voir dire examination, veniremember Johnston indicated several times

that he could not answer the issue of future dangerousness in the affirmative based solely on the facts of the case. In language indistinguishable from that cited in *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Cr.App.1993), he was asked and asserted that without some other evidence, he would *never* be able to answer special issue two affirmatively based solely on the facts of the case. Veniremember Smart answered that she could *under no circumstance* answer affirmatively that appellant was a continuing danger to society based solely on the facts of the case. She answered that she would require other evidence, specifying that she would require a "prior criminal history."

The trial court sustained the State's motion to strike for cause on grounds that the veniremembers evidenced a prejudice or bias against the law. In *Marras v. State*, 741 S.W.2d 395 (Tex.Cr.App.1987), we held that a veniremember who repeatedly stated that he could not answer "yes" to future dangerousness based solely upon the evidence in the case was biased against the law upon which the State was entitled to rely. However, we overruled *Marras* to the extent that it conflicts with *Garrett*. The State concedes that under *Garrett* the trial court committed reversible error, but implores this Court to reconsider and overrule *Garrett*, and return to the holding of *Marras*. After careful consideration of the State's well reasoned and briefed arguments, we remain unconvinced that the holding of *Garrett* is flawed.

■ In *Garrett*, we held that it is reversible error for the trial court to grant a challenge for cause based on a veniremember's statement that he will require something more than the facts of the case to answer special issue two affirmatively. We adhered to case law which concluded that the facts of a capital crime, if "severe enough," will *support* a jury verdict of "yes" to special issue two. *Id.* at 859 (emphasis original). This is an appellate standard of review to determine the sufficiency of the evidence to support an

affirmative answer to special issue two. It is not and should not be considered as a juror qualification standard. The law permits a particular jury or an individual juror to answer affirmatively special issue two based solely on the facts of a capital case but it does not *require* that any or all must do so. *Id.* (emphasis original).

■ The State's contention that the juror's inability to answer special issue two based solely on the facts of the offense increases the State's burden of proof is simply incorrect. This contention relies on a confusion of the role of the appellate court with the role of the jury—a confusion we corrected in *Garrett*. The determination of whether the facts of the offense itself are sufficient to support an affirmative finding to special issue two is an appellate standard of review and is not a tool intended or designed to be used as a basis for a challenge for cause.

We also specifically stated in *Garrett* that if the State did not want a juror seated who would require more than the facts of the case to answer special issue two affirmatively, it should exercise a peremptory challenge against him during voir dire. *Id.* at 861. We further held that "[e]rror in granting a State's challenge for cause in a capital case is reversible notwithstanding that the State may have had peremptory challenges remaining at the conclusion of voir dire." *Id.*, citing, *Grijalva v. State*, 614 S.W.2d 420, 423 (Tex.Cr.App.1981) (rejecting the notion that an erroneously granted challenge for cause on the State's motion is harmless if the State failed to exercise all of its peremptory challenges).

The State argues that we should revisit and overturn the holdings of *Garrett* and *Grijalva*. We uphold the correctness of the holdings and decline the State's invitation. Nor are we prepared to apply *Garrett* only prospectively. *See Wilson v. State*, 863 S.W.2d 59 (Tex.Cr.App. 1993).

The State concedes that *Garrett* is directly applicable and contrary to the holdings of the

trial judge in the present case. Appellant's eleventh and twelfth points of errors are, therefore, sustained.

Appellant's conviction is reversed and the cause is hereby remanded to the trial court.

McCORMICK, P.J., and WHITE, J., dissent.