# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-17-00025-CR
NO. 03-17-00026-CR
NO. 03-17-00027-CR

**Charles Fischer, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NOS. D-1-DC-12-900145, D-1-DC-12-900147 & D-1-DC-16-904072
HONORABLE KAREN SAGE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Charles Fischer appeals his convictions on multiple indictments for six counts of indecency with a child by contact, four counts of sexual assault of a child, and three counts of indecency with a child by exposure committed against D.W., J.G., and A.M. when Fischer was their treating psychiatrist at Austin State Hospital. *See* Tex. Penal Code § 21.11(a)(1), (2).[1] After a three-and-a-half week trial, the jury assessed Fischer's punishment at twenty years' imprisonment for each

---

[1] Charges in three causes were consolidated for trial. In cause number D-1-DC-12-900145, the jury convicted Fischer of two counts of indecency with a child by contact and one count of indecency with a child by exposure against D.W. In cause number D-1-DC-12-900147, the jury convicted Fischer of two counts of indecency with a child by contact, one count of indecency with a child by exposure, and four counts of sexual assault of a child against J.G. In cause number D-1-DC-16-904072, the jury convicted Fischer of two counts of indecency with a child and one count of one count of indecency with a child by exposure against A.M.

count of indecency with a child by sexual contact; twenty years' imprisonment for each count of sexual assault of a child;[2] and ten years' imprisonment for each count of indecency with a child by exposure, but recommended suspension of the ten-year sentences and placement on community supervision.[3] The district court rendered judgments of conviction on the jury's verdicts.

In sixteen issues on appeal, Fischer contends that the district court violated his constitutional rights to an impartial jury, to counsel, and to effective assistance of counsel by preventing his attorney from asking the venire two questions: whether they could maintain the presumption of innocence, and whether they could consider probation, in light of a multiplicity of accusations. Fischer also contends that the statute concerning evidence of extraneous acts or offenses in article 38.37 of the Texas Code of Criminal Procedure is unconstitutional on its face and as applied to him, that the district court abused its discretion by admitting extraneous evidence of sexual misconduct, and that article 38.37 violates the Ex Post Facto Clause. We will affirm the district court's judgments of conviction.

## BACKGROUND

The jury heard that Charles Fischer committed the charged offenses against D.W., J.G., and A.M. when Fischer was their treating psychiatrist at Austin State Hospital. Fischer's patients in the Child and Adolescent Psychiatric Services Unit were primarily adolescent boys with

---

[2] In cause number D-1-DC-12-900147, involving the sexual assault of a child offenses against J.G., count 3 was subsumed by count 1, and count 5 was subsumed by count 4.

[3] The district court ordered that the sentences in cause numbers D-1-DC-16-900145 and D-1-DC-16-904072 would run concurrently. But the court ordered that the sentences in cause number D-1-DC-16-900147 would run consecutively to the sentences in the other two causes.

2

severe behavioral problems, intellectual disabilities, mental illness, depression, pervasive developmental disorders, or a serious history of physical, sexual, and mental abuse. In 2011, the Department of Family and Protective Services investigated a sexual abuse allegation made against Fischer. After the Department confirmed that allegation, the Austin Police Department reexamined other allegations against Fischer, eventually resulting in his charges for the offenses at issue here.[4]

During Fischer's trial for the offenses against D.W., J.G., and A.M., the jury heard testimony from four additional victims, Z.L., W.C., B.R., and D.W.R. The district court admitted evidence from those four victims under article 38.37 of the Code of Criminal Procedure. At the conclusion of the trial, the jury convicted Fischer of six counts of indecency with a child by contact, four counts of sexual assault of a child, and three counts of indecency with a child by exposure and assessed punishment. The district court rendered judgments in accordance with the jury's verdicts. Fischer filed a motion for new trial that was overruled by operation of law. This appeal followed.

## DISCUSSION

**Issues 1-12: Voir dire questions as to presumption of innocence and community supervision**

In his first twelve issues, Fischer contends that the district court violated his constitutional rights to an impartial jury, to counsel, and to effective assistance of counsel by preventing his attorney from asking the venire two questions: whether they could maintain the presumption of innocence, and whether they could consider the minimum sentence, in light of a multiplicity of accusations.[5] We review a trial court's ruling limiting voir dire questioning for an

---

[4] Charges concerning a fourth victim, B.W., were dismissed because B.W. refused to testify.

[5] The court split the 150-person panel into two groups of 75 for the sake of convenience.

3

abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *see Samaripas v. State*, 454 S.W.3d 1, 5 (Tex. Crim. App. 2014) ("A trial court has broad discretion over the voir dire process, including setting reasonable limits and determining the propriety of a particular question."). In this context, a trial court abuses its discretion only when a proper question about a proper area of inquiry is prohibited. *Samaripas*, 454 S.W.3d at 5. Further, the Texas Court of Criminal Appeals has concluded that even if a voir dire question is erroneously denied, no harm results when the record reflects that counsel was able to ask the venire a question that was "essentially the same" as the denied question or that elicited the same information that the denied question sought to elicit. *Woods v. State*, 152 S.W.3d 105, 110 (Tex. Crim. App. 2004); *Rachal v. State*, 917 S.W.2d 799, 815 (Tex. Crim. App. 1996).

### 1. Presumption of innocence

Here, defense counsel proposed asking the venire whether they could maintain the presumption of innocence given the many charges against him. After hearing the parties' arguments, the court refused defense counsel's precise question but allowed him to ask other questions that were nearly the same as counsel's proposed question:

> [Defense counsel]: Solely on the issue of presumption of innocence, I propose to inform the jury of how many charges he's charged with, the title of charges, not go into the elements or any facts of the charges, and then question them in light of the fact that he is charged with that many charges, can you still maintain the presumption of innocence.
>
> . . . .
>
> THE COURT: What if—here's what I'm willing to do: Ask them about the presumption of innocence, and without going into specifically

4

the number of counts, what if there [was] more than one count, does that change your view. Without discussing specifically the number of counts, but making it clear that the presumption applies, like you say, whether it's zero to a hundred counts. I mean, you can say it applies if there's more than—and if there's more than one count, without going specifically into the number of counts, but putting it out there.

. . . .

[Defense counsel]: Let me be very clear about the question I propose. I propose to ask the jurors, again, explain the law to them on presumption of innocence, that the charging instruments are not evidence that the fact that a person has been indicted and charged is not evidence of guilt. The law is they have to maintain presumption of innocence. Even though someone is indicted, that presumption applies regardless of how many charges there are in the indictment. In this case, there are—I would list the charges by name only, not the elements, no facts, and I would then ask the jury, ["]In light of the fact that those charges are against the defendant in this case, can you still maintain the presumption of innocence?["]

. . . .

THE COURT: I think that's going to create the impression there are more victims. I mean, is there—would you not be okay by saying, ["]The presumption applies no matter how many counts["] and without asking for a commitment question and just ask them if it would change their view if there were numerous counts[?]

[Defense counsel]: I think I'm entitled to ask the questions I just stated into the record.

THE COURT: I'll allow you to ask the question I just stated.

During voir dire, defense counsel asked several variations of the presumption question, including with reference to "multiple offenses" and "multiple charges," as he had proposed:

5

- This is kind of a tough question, but, again, I want to ask you to be honest about it. Frankly, it scares me to death. The presumption of innocence applies when a person is charged with one charge in a trial or whether they're charged with a hundred. And my fear is that if someone is charged with more than one offense, that may affect the presumption of innocence. And if it does, that's fine. There's nothing wrong with that. It may be human nature. But I want to hear your answers to that. I'll start down here. Number 1, if someone is charged with more than one offense, do you feel like because they're charged with *multiple offenses* that they may be guilty to some degree just because they're charged with more than one?

- Do you think if somebody is charged with more than [one] offense, whether it's two or a hundred, that if you find out they are charged with more than one, you might think they were guilty of something just because they were charged—[6]

- Just the fact there are *multiple charges*, would that affect the presumption of innocence for you?

- Can you separate out the charges and just say if the person is accused of one or a hundred charges, how would that affect your view of whether he might be guilty just based on the charges?

- I just want to talk with you about—several of you said, well, depends on the circumstances. . . Can you think of circumstances where there could be *multiple charges*, *multiple victims*, and be false outcries?

- If a person is charged with *multiple charges*, the presumption of innocence still applies. . . . But what I'd like to know from you is, in a case where there's *multiple charges*, where the person is accused of—you know, you pick a number. Does that affect your opinion of the presumption of innocence? Do you feel like if there's *multiple charges*, that person must have done something and therefore he may be guilty some what because he's been charged with *multiple crimes*?

On this record, Fischer has not shown harm from the court's ruling as to the presumption-of-innocence question because defense counsel was able to ask essentially the same question that he proposed. *See Woods*, 152 S.W.3d at 110; *Rachal*, 917 S.W.2d at 815.

---

[6] Defense counsel's question was interrupted by a prospective juror responding, "No."

### 2. Consideration of probation

Defense counsel also proposed informing the prospective jurors that "in this case, the charges include two counts of aggravated sexual assault of a child, seven counts of indecency with a child by contact, five counts of indecency with a child by exposure, and nine counts of sexual assault of a child" and that they "ha[d] the option of giving probation [i.e., community supervision] on each and every count." He proposed asking the venire "whether they could consider probation on multiple counts of indecency" and "as the appropriate punishment under some circumstances for all counts in the indictment[s] that are joined for trial on the case." The court denied the request, stating that "the venireman only needs to be willing to consider the full range of punishment for the offenses committed" and "committing a panelist to consider community supervision if they were to convict on multiple counts is improper and would be fact specific."

The Court of Criminal Appeals has stated that a prospective juror must be able to "consider the full range of punishment for the offense generally, and not for some specific manner and means of committing the offense." *Johnson v. State*, 982 S.W.2d 403, 406 (Tex. Crim. App. 1998). The Court has further stated that counsel "veers into impermissible commitment questions when [counsel] attempts to commit a veniremember to consider the minimum sentence based on specific evidentiary facts." *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010); *see Shot with Two Arrows v. State*, 64 S.W.3d 606, 607 (Tex. App.—Fort Worth 2001, no pet.) (noting that juror "must only be able to consider the minimum sentence in an appropriate case, not a fact specific hypothetical involving multiple convictions for separate offenses").

Here, defense counsel proposed informing the prospective jurors of Fischer's specific charges in this case and then asking them whether they could consider probation as punishment on multiple counts of indecency and on all counts of the indictments in the causes joined for trial. By this question, counsel intended to go beyond the minimum requirement of confirming whether jurors could consider probation for a particular charged offense, and instead ask about a group of separately indicted offenses in this specific case. *See Shot with Two Arrows*, 64 S.W.3d at 608.

Further, we note that as to the most serious counts Fischer faced—aggravated sexual assault of a child[7]—defense counsel was not prevented from asking prospective jurors individually whether they could consider facts that would make probation appropriate:

> The count of Aggravated Sexual Assault or the charge of Aggravated Sexual Assault basically means a person intentionally or knowingly causes penetration of the anus of a child by any means, and the child is younger than 14 years of age. I'm not doing—what was done earlier is lumping a lot of stuff together. I'm talking about these particular elements. Can you conceive of a set of facts where you would think probation would be appropriate for these elements?

That question was asked after the venire had been informed of the multiple counts against Fischer, and the prospective jurors who responded that they could not consider probation for those elements of aggravated sexual assault were not seated on the jury. *See, e.g.*, *Alvarez v. State*, No. 11-05-00100-CR, 2006 Tex. App. LEXIS 2824, at *8 (Tex. App.—Eastland Apr. 6, 2006, no pet.) (mem. op., not designated for publication) (noting that even if trial court erred in permitting commitment questions that included reference to victim's age, defendant was not harmed where

---

[7] The jury acquitted Fischer of these counts.

8

none of panel members who said that they could not consider probation served on jury). Moreover, those who were seated on Fischer's jury showed their ability to consider probation, despite having convicted him of multiple offenses against multiple victims, by ultimately recommending probation for each of the counts of indecency with a child by exposure.

On this record, Fischer has not shown harm—i.e., a substantial and injurious effect or influence on the jury's verdict—from the court's rulings on the specific questions defense counsel proposed to ask the venire as to the presumption of innocence and consideration of probation in the context of multiple charges. *See* Tex. R. App. P. 44.2(b); *Woods*, 152 S.W.3d at 109–10. Contrary to Fischer's contention, the court did not "categorical[ly] deny" defense counsel's inquiries, and Fischer has not shown that the court's rulings violated his constitutional rights to an impartial jury, to counsel, and to effective assistance of counsel. We overrule Fischer's first twelve issues.

**Issues 13: Facial constitutionality of Texas Code of Criminal Procedure art. 38.37**

In his thirteenth issue, Fischer contends that article 38.37 of the Code of Criminal Procedure pertaining to evidence of extraneous offenses is unconstitutional on its face because it violates constitutional due-process protections. Fischer complains specifically about section 2(b) of article 38.37, which applies to trials for certain sexual offenses—including indecency with a child and sexual assault of a child as charged here—and allows admission of evidence showing that the defendant committed a separate sexual offense "for any bearing the evidence has on relevant matters," including the defendant's character:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described

9

in Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Tex. Code Crim. Proc. art. 38.37, § 2(b); *id*. § 2(a)(1)(C)–(D); *Robisheaux v. State*, 483 S.W.3d 205, 210 (Tex. App.—Austin 2016, pet. ref'd). Before that type of evidence may be introduced, article 38.37 requires the trial judge to conduct a hearing outside the presence of the jury to determine whether the evidence "will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *Id*. § 2-a. The State must give a defendant 30 days' notice before trial of its intent to use such extraneous-offense evidence in its case in chief. *Id*. § 3.

"A party raising a facial challenge to the constitutionality of a statute must demonstrate that the statute operates unconstitutionally in all of its applications." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011); *see Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018). "In a facial challenge to a statute's constitutionality, courts consider the statute only as it is written, rather than how it operates in practice." *Lykos*, 330 S.W.3d at 908. However, in *Robisheaux v. State*, we held that section 2(b) of article 38.37 was not shown to operate unconstitutionally in all its applications, and we rejected the contention that the statute denied defendants due process and due course of law. 483 S.W.3d at 209, 213; *see Burke v. State*, No. 04-16-00220-CR, 2017 Tex. App. LEXIS 4248, at *2–4 (Tex. App.—San Antonio May 10, 2017, pet. ref'd) (mem. op., not designated for publication) (applying *Robisheaux* to case transferred from this Court); *see also Waters v. State*, No. 02-17-00368-CR, 2018 Tex. App. LEXIS 10304, at *4 (Tex. App.—Fort Worth Dec. 13, 2018, no pet. h.) (mem. op., not designated for publication)

10

(noting that court's previous rejection of facial challenge to constitutionality of article 38.37 alleging due process and fair trial violations). Accordingly, we overrule Fischer's thirteenth issue.

**Issues 14–15: Constitutionality of article 38.37 as applied and admission of extraneous evidence**

In his fourteenth and fifteenth issues, Fischer contends that article 38.37 of the Code of Criminal Procedure is unconstitutional as applied to him and that the district court abused its discretion by admitting extraneous evidence of sexual misconduct involving Z.L., W.C., B.R., and D.W.R. Fischer states that article 38.37 has withstood constitutional challenges because in many cases there is no evidence of the offense besides the child's accusation, but in his view, that concern is not applicable here because the jury was presented with multiple indictments of child sexual abuse. Under these circumstances, Fischer contends that admission of the extraneous evidence of sexual misconduct was unfairly prejudicial, violating his constitutional right to due process and his right to a fair trial.

### 1. As applied challenge to article 38.37

"[I]n an as-applied challenge, the claimant 'concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances.'" *Estes*, 546 S.W.3d at 698 (quoting *Lykos*, 330 S.W.3d at 910). Because a statute may be valid as applied to one set of facts but invalid as applied to another set of facts, a claimant must show that, in its operation, the challenged statute was unconstitutionally applied to him. *Lykos*, 330 S.W.3d at 910. Our review of a statute's constitutionality begins with the presumption that the

11

statute is valid and that the Legislature acted reasonably by enacting it. *Faust v. State*, 491 S.W.3d 733, 743–44 (Tex. Crim. App. 2015); *see Estes*, 546 S.W.3d at 698.

Fischer contends that the two aspects of article 38.37 designed to provide him with due process—Rule 403 and the trial court's sufficiency review—"were worthless" here and did not protect him from an unfair trial. He points out that "Rule 403 excluded none of the extraneous cases against [him]" and says that their cumulative effect was to weaken the State's burden of proof as to the allegations in the indictment. However, Fischer does not dispute that the procedural protections in article 38.37—pretrial notice of intent to introduce an extraneous sexual offense and a hearing on the evidentiary sufficiency of such extraneous offense—were followed before any evidence of extraneous conduct was admitted and that the district court complied with Rule 403. As the State notes, the mere fact that the application of Rule 403 did not result in the exclusion of any extraneous evidence does not show that Fischer's due-process rights were violated. We conclude that Fischer failed to meet his burden of establishing that the statute operated unconstitutionally as applied to his particular set of facts and circumstances. *See Lykos*, 330 S.W.3d at 910.

### 2. Rule 403 balancing

Fischer further contends that the district court abused its discretion by admitting the "revolting" extraneous-conduct evidence offered at trial over his Rule 403 objections. As we have noted, article 38.37 provides that evidence of separate sexual offenses, besides those for which the defendant is being tried, may be admissible character-conformity evidence. *See* Tex. Code Crim. Proc. art. 38.37, § 2(b). However, even extraneous-offense evidence admissible under article 38.37 may be excluded under Texas Rule of Evidence 403. *See Robisheaux*, 483 S.W.3d at 212 (noting

12

that article 38.37 section 2(b) allows admission of separate sexual offense evidence "[n]otwithstanding Rules 404 and 405" but not excluding Rule 403). Rule 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; by considerations of undue delay; or by needless presentation of cumulative evidence. *Id*. When conducting a Rule 403 analysis, the trial court must balance: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). These factors may blend together in practice. *Id*. at 642.

We review a trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement, and we may not substitute our own decision for that of the trial court. *Id*.; *see United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) (noting that trial courts are afforded "especially high level of deference" for Rule 403 determinations); *Robisheaux*, 483 S.W.3d at 218 (citing *Fields*).

The State correctly notes that as to the extraneous acts involving Z.L., Fischer did not raise an objection seeking to exclude Z.L.'s testimony on Rule 403 or on due-process grounds and has thus failed to preserve his complaint as to the admission of extraneous acts involving Z.L. *See* Tex. R. App. P. 33.1(a). As to the other three individuals, W.C., B.R., and D.W.R., the extraneous-conduct evidence admitted at trial did not deprive Fischer of the right to be convicted only upon proof beyond a reasonable doubt of every fact necessary to constitute the offenses he was charged with committing, and the court could have reasonably concluded that the evidence of extraneous acts in this case was not unfairly prejudicial.

The first three factors the court had to consider in its Rule 403 balancing were the inherent probative force of the proffered evidence, the proponent's need for that evidence, and any tendency of the evidence to suggest decision on an improper basis. The record shows that the probative force of the evidence was strong, that the State needed the evidence to address attempts to undermine the credibility of the victims who were Fischer's institutionalized patients, and the tendency of the evidence to suggest decision on an improper basis was no more so than in other prosecutions involving child sexual abuse. Specifically, the jury heard evidence that:

- when D.W. was fifteen, Fischer masturbated in front of him and stimulated D.W.'s penis;

- when J.G. was fourteen, Fischer masturbated in front of him, had J.G. perform oral sex on Fischer, and touched J.G.'s penis; and

- when A.M. was between twelve and fourteen, Fischer masturbated in front of him, stroked A.M.'s penis, forced A.M. to touch Fischer's penis, and anally penetrated A.M.

14

The extraneous-conduct evidence alleged similarly that:

- when Z.L. was sixteen, Fischer masturbated in front of him, performed oral sex on him, had Z.L. perform oral sex on Fischer, and penetrated Z.L.'s anus;

- when W.C. was fifteen or sixteen, Fischer exposed himself to W.C. and performed oral sex on W.C.;

- when B.R. was eight or nine and until he was sixteen, Fischer engaged in various forms of sexual contact with him, including touching B.R.'s penis, performing oral sex on B.R., and having B.R. perform oral sex on Fischer; and

- when D.W.R. was fourteen, Fischer performed oral sex on D.W.R., had D.W.R. penetrate him anally, and had D.W.R. perform oral sex on Fischer.

Fischer's conduct towards Z.L., W.C., B.R., and D.W.R. bore strong similarity to the charged conduct against D.W., J.G., and A.M. The victims were of similar ages, and in most instances, the circumstances of the crime was nearly identical, involving institutionalized child victims who were abused by a physician at that institution. Fischer acknowledges that W.C.'s and D.W.R.'s evidence had probative value, but Fischer challenges B.R.'s testimony because of its relative dissimilarity and remoteness. However, as we noted *Robisheaux*, remoteness is only one factor in determining the probative value of an offense. 483 S.W.3d at 219. Further, the rationale for discounting remote conduct is that people may change with the passage of time. *Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. denied). Here, the intervening extraneous acts indicate that Fischer has not changed over time, rebutting the remoteness defense.

The court in this case could have also reasonably concluded that the State had a strong need for this extraneous evidence because Fischer's victims were children with mental illness, who were particularly vulnerable to attacks on their credibility. Defense counsel raised the issue of their

15

mental illnesses and diagnoses during his opening statement, suggesting that the allegations were not truthful. Moreover, although "sexually related bad acts and misconduct involving children are inherently inflammatory," *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013), "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial," *id.*, and the extraneous conduct was no more "revolting" or fundamentally different in character than Fischer's charged offenses. Thus, these first three factors weighed in favor of the admissibility of the evidence.

As to the next factors the court had to consider, we note that the evidence as to the extraneous offenses was not confusing or technical in nature and would not tend to mislead the jury, which weighs in favor of admission of the evidence. *See Gigliobianco*, 210 S.W.3d at 641 (noting that scientific evidence is of type that "might mislead a jury that is not properly equipped to judge the probative force of the evidence"). Further, because the quality of the extraneous-conduct evidence—firsthand recollections of events of abuse from the victims—was identical to that of the charged offenses, the district court could have reasonably concluded that the jury was unlikely to give it undue weight.

Finally, the court had to consider the likelihood that presentation of the evidence would consume an inordinate amount of time or merely repeat evidence already admitted. As to this factor, the court could have reasonably determined that the presentation of the extraneous conduct evidence from these witnesses would be time-consuming to address but not merely duplicative or prolonged such that it impacted the "efficiency of the trial proceeding." *Id.*

16

Accordingly, we conclude that the district court could have determined, within the zone of reasonable disagreement, that the probative value of the evidence of these separate sexual offenses was not substantially outweighed by a danger of unfair prejudice under Rule 403. We overrule Fischer's fourteenth and fifteenth issues.

**Issue 16: Application of article 38.37 did not violate Ex Post Facto Clause**

In his sixteenth and final issue, Fischer contends that the application of article 38.37 of the Code of Criminal Procedure violates the Ex Post Facto Clause of the United States Constitution, which states that "[n]o . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9. The Ex Post Facto Clause prohibits:

- Every law that makes an action done before the passing of the law—and which was innocent when done—criminal, and punishes such action;

- Every law that aggravates a crime, or makes it greater than it was, when committed;

- Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed; and

- Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Peugh v. United States*, 569 U. S. 530, 538 (2013) (citing *Calder v. Bull*, 3 U.S. 386, 390 (1798)). Only the last prohibition, addressing changes in evidentiary rules to permit lesser or different evidence than legally required at the time of the offense, is at issue here.

Fischer was charged with acts that occurred in 2001, 2002, and March 2003. Effective September 1, 2003, the Legislature amended article 38.37, allowing the admission of

17

evidence showing that the defendant committed a separate sexual offense "for any bearing the evidence has on relevant matters." *See* Act of May 17, 2013, 83d Leg., R.S., ch. 387, §§ 1–3, 2013 Tex. Gen. Laws 1167, 1167–68 (codified at Tex. Code Crim. Proc. art. 38.37). Before that amendment, Fischer notes that Texas Rule of Evidence 404(b) excluded evidence of a defendant's extraneous "bad acts" if it was offered to prove propensity but allowed admission of such evidence for other purposes. *See* Tex. R. Evid. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g) (noting that for admission of evidence under Rule 404(b), trial judge must conclude that evidence tends to serve some purpose other than character conformity to make existence of fact of consequence more or less probable than it would be without such evidence). Fischer states that Rule 404(b) was designed to preclude the propensity rationale a juror might undertake with knowledge of multiple charges, and here, "the extraneous character evidence simply proves that Appellant had a propensity for molesting boys."

But as Fischer acknowledges, we rejected an ex post facto challenge to these statutory provisions in *Robisheaux*. *See* 483 S.W.3d at 215; *see also Burke*, 2017 Tex. App. LEXIS 4248, at *10 (following *Robisheaux*); *Ryder v. State*, 514 S.W.3d 391, 402 (Tex. App.—Amarillo 2017, pet. ref'd) (rejecting ex post facto challenge to article 38.37). In *Robisheaux*, we agreed with our sister courts' conclusions that although article 38.37 enlarges the scope of admissible testimony, it makes no change to the State's burden of proof and no decrease to the amount of evidence necessary to sustain a conviction and thus, does not violate ex post facto prohibitions. 483 S.W.3d at 215 (citing *Baez v. State*, 486 S.W.3d 592, 600 (Tex. App.—San Antonio 2015, pet. ref'd) *cert. denied*, 2016 U.S. LEXIS 6202 (2016)). Other than the specific dates of his offenses and his jury charge—which

18

tracks article 38.37—Fischer presents no facts distinguishing his case from *Robisheaux*. Thus, he has not met his burden of establishing the unconstitutionality of article 38.37 as applied to him here. *See Estes*, 546 S.W.3d at 698; *Lykos*, 330 S.W.3d at 910. Additionally, we note that because these indictments were joined for trial, the jury would have heard evidence indicating Fischer's pattern of sexual behavior—the referenced "propensity for molesting boys"—even without the evidence of the extraneous acts against W.C., B.R., and D.W.R. admitted under article 38.37.[8] *See* Tex. R. App. P. 44.2(b). We overrule Fischer's sixteenth issue.

## CONCLUSION

We affirm the district court's judgments of conviction.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: December 28, 2018

Do Not Publish

---

[8] We further note that the jury acquitted Fischer of one count of sexual assault of a child, two counts of aggravated sexual assault of a child, and one count of indecency with a child by sexual contact.

19